REID, Judge.
Interior Contractors, Inc. brought this action against Cashen Metal Fabrication, Inc., seeking to recover the sum of $11,476.-95, allegedly the balance due on certain contracts entered into between the parties. Plaintiff’s petition alleges that on October 29, 1965, McDermott Shipyard, a division of J. Ray McDermott & Company, Inc., awarded to defendant, Cashen Metal Fabrication, Inc., a contract for constructing and loading stern sections for eight fishing vessels at a contract price of 23‡ per neat pound of steel based upon an estimated 73 tons per section, and that on November 8, 1965, in consideration for plaintiff having secured the mentioned contract from said McDermott Shipyard for the account of defendant and in further consideration of services rendered in performing all necessary labor and engineering services in connection therewith, defendant agreed to pay plaintiff the sum of $69,992.00. The petition further alleges that plaintiff and defendant entered into a supplemental agreement, under the terms of which defendant obligated itself to pay plaintiff 26.955% of the total contract price which defendant would receive from McDermott, in lieu of the aforesaid $69,992.00, said percentage to be paid to plaintiff each time defendant received payment from McDermott Shipyard; that plaintiff had submitted invoices to defendant for a total amount of $89,215.-29, of which defendant had paid the sum of $77,738.34, leaving the balance due of $11,-476.95; and plaintiff prayed for judgment in that amount, together with interest and costs.
In its answer and reconventional demand, Cashen Metal Fabrication, Inc., admitted entering into contracts with Interior Contractors, Inc., but alleged that at the time Interior was acting as agent for Cashen, Interior was actually engaged in practices that were adverse to the interests of Cashen and which ultimately resulted in great loss to Cashen. It alleged that while still engaged in completing the work for McDer-mott, upon which its contract with Interior was based, it submitted to McDermott its bid of $109,000.00 for the construction of six Jack Houses for Vessells CO-MAX 2, and subsequently learned that its agent, Interior Contractors, Inc., instead of acting on its behalf, had actually, through its subsidiary and its influence with employees of *710 J. Ray: McDermott & Company, Inc., caused McDermott to enter into a contract with one of its competitors for the same work at a higher price of $110,000.00; that the unfaithful acts of its agent, Interior Contractors, Inc., caused it to lose the profit it would have made on the bid of $109,000.00, which profit would have amounted to $18,-622.61; and that because of the unlawful, unfaithful and fraudulent acts of Interior it was entitled to payment of its attorney’s fees, and asked that such fees be fixed by the Court at not less than $2,500.00. A general denial of the reconventional demand was filed on behalf of Interior.
Subsequently Cashen filed a supplemental and amending reconventional demand, alleging that because of the breach of contract by Interior, it was entitled to reimbursement of the $77,738.34 paid to Interior, in addition to the sums of $18,622.61 and $2,500.00 previously prayed for.
Numerous depositions were taken, and after trial of the matter on April 22, 1968, and the submission of briefs, the trial Judge, for written reasons assigned, rendered judgment in favor of Interior Contractors, Inc. and against Cashen Metal Fabrication, Inc. in the amount of $11,476.95, together with interest and costs. The judgment was rendered October 14, 1968, and signed in open court on October 17, 1968.
The application of Cashen Metal Fabrication, Inc. for a new trial was heard on November 15, 1968, and was denied. A suspensive and devolutive appeal was granted the defendant on the same day.
The judgment rendered on October 17, 1968, was subsequently amended nunc pro tunc to include the dismissal of the re-conventional demand of Cashen Metal Fabrication, Inc., at its cost and to its prejudice.
In their original brief filed with this Court, counsel for the appellant, Cashen Metal Fabrication, Inc., allege three specifications of error, as follows:
“1. The Court held that Mr. Lorino, who is employed by plaintiff, appel-lee estimated the job for appellant when actually he only assisted Mr. Cashen who represented appellant, plaintiff.
2. The contract referred to by the lower court as a supplemental contract, was a new one and spelled out the entire consideration for the contract of December 30 1965 and which was actually based on new business which Interior Contractors, Inc. promised to obtain for Cashen Metal Fabrication, Inc., from J. Ray McDermott Company, Inc.
3. The Court held in reasons for judgment, that there was no exclusive agency. It should have held that there was in existence an agency in which Interior Contractors, Inc., representing Cashen Metal Fabrication, Inc., as agent (exclusive or not) obligated itself to represent Cashen Metal Fabrication, Inc., in obtaining new contracts from J. Ray McDermott & Company, Inc., and this obligation as agent would prevent Interior Contractors, Inc. from violating its agency agreement (exclusive or not) by taking business away from Cashen Metal Fabrication, Inc., and giving it to another.”
In their supplemental brief, counsel for appellant contend the trial Court erred in the following particulars:
1. The trial Judge misinterpreted the written contract between plaintiff and defendant (a) in finding that parol evidence varied the terms of the written contract, (b) in finding that there is ambiguity in the written contract, (c) in finding that the contract contains no reference to future contracts, (d) in finding that the written contract for future contracts were for “additional stern sections” only, and (e) in not finding if ambiguity is shown in a contract *711 drawn by one of the parties, any doubts shall be construed against him.
2. The trial Judge erred in not finding that the contract established an agency by which plaintiff, as agent, was under the duty to aid and assist its principal in obtaining future contracts from J. Ray McDermott & Company, Inc.
3. The trial Judge erred in not finding the agency was never terminated.
4. The trial Judge erred in not finding unfaithfulness of the agent was a fraud and made the agent liable for the loss of profits its principal was deprived of, and for the attorney fees of its principal in enforcing its rights.
5. The trial Judge erred in not finding the deliberate unfaithfulness of the agent additionally deprives it of the profits of the original contract.
6. The trial Judge erred in not finding that the allegations of the Supplemental Reconventional Demand showing the commission paid is true for no answer to it was filed and no proof is necessary for it is a judicial admission.
The appellant contends, first, that the plaintiff-appellee was to act as its exclusive agent in securing additional contracts and business, for which it was to be paid on a percentage basis of 26.055%, and second, that the plaintiff-appellee violated the contract and its mandate by underbidding the appellant and taking business away from it, from which it suffered a loss and for which it demanded its expected profit plus attorney’s fees and the return of the original amounts paid to appellee.
This all involves interpretation of the two contracts, and the significant phase of the entire situation is that in the supplemental and amended contract of December 30, 1965, the consideration for the additional contracts to be secured was stricken out by Mr. Cashen, the head of the defendant-appellant concern, because he said he could not live with it and that the commissions would have been too much and would have prevented his company from making its expected profit.
The trial Judge rendered excellent reasons for judgment and we are taking the liberty of quoting from the same as follows, to-wit:
“II. FINDINGS OF FACT
“The evidence shows that Interior Contractors, Inc. was a corporation established basically for the purpose of planning and estimating marine construction. In doing this type of work they apparently had accumulated considerable contracts in the ship building company of J. Ray Mc-Dermott & Company, Inc. They received information that McDermott was going to let a contract for the construction of stern sections for fishing vessels. Walter Lorino, Sr. of Interior, contacted Mr. Cashen, the president of Cashen Metal Fabrication, Inc., who agreed to take on the job with the help of Interior. As a result, Mr. Lorino estimated the job for Mr. Cashen, and on October 29, 1965, Cashen Metal Fabrication, Inc. entered into a contract with J. Ray McDermott & Company, Inc. for the construction of eight stern sections for fishing vessels.
“On November 8, 1965, Cashen Metal Fabrication, Inc. entered into a contract with Interior Contractors, Inc. whereby Cashen agreed to pay to Interior the sum of $69,992.00,
“ ‘ * * * in consideration of the services of Interior Contractors, Inc. in performing all the necessary estimating labor and engineering services and for securing for Cashen a contract .from McDermott Shipyard, a division of J. Ray McDermott & Company, Inc., Morgan City, Louisiana for the constructing and loading out of stern sections for eight fishing vessels at a *712 total contract price of approximately $268,640.00 * * * ’
“On December 30, 1965, the same parties entered into a supplemental contract, the contents of which give rise to the present dispute. The portion of that supplemental agreement pertinent to the issues herein reads as follows:
“ ‘NOW THEREFORE, for and in consideration of the services rendered by “Interior Contractors” in performing all of the necessary estimating labor and engineering services and for securing for “CASHEN” a contract from Mc-Dermott Shipyard, a division of J. Ray McDermott & Company, Inc., Morgan City, Louisiana, for the constructing and loading out of stern sections for eight (8) fishing vessels, and for the additional services presently being rendered and to be rendered by “Interior Contractors” toward securing additional contracts from the said J. Ray McDermott & Company, Inc., Morgan City, Louisiana, or any of •its divisions for the benefit of, and to be awarded to the said “Cashen”, it is mutually agreed and the said Cashen does hereby agree, bind and obligate itself, its heirs and/or assigns, to pay to the said “INTERIOR CONTRACTORS”, for the aforesaid valuable services rendered in securing the aforesaid contract for “CASHEN” from Mc-Dermott Shipyard, for the constructing and loading out of stern sections for eight (8) fishing vessels the sum of 26.055% of the total contract price to be received by the said “CASHEN” from McDermott Shipyard * * * ’
“Based on the agreed 26.055% of the total contract price between Cashen and McDermott, Interior ihvoiced Cashen for a total of $89,215.29. Of this amount Cashen paid Interior $77,738.34 leaving a balance of $11,476.95 which forms the basis of the suit by Interior against Cashen. The $11,476.95 represents the total amount in petitioner’s invoice number 673 issued to defendant on May 2, 1966.
“A narration of subsequent events is necessary for a comprehension of each parties’ interpretation of the language of the agreement. Subsequent to the supplemental agreement, it became known to both Mr. Cashen and the officers of Interior that McDermott would let a contract for 6 Jack houses. About April 1, 1966 Mr. Cashen secured the plans from an architect with McDermott, and subsequently submitted a bid to McDermott which, if accepted by them, would have netted Mr. Cashen $18,622.61.
“In the meantime, on January 25, 1966, the same incorporators of Interior Contractors, Inc., namely, Mr. William J. Boyle, Jr., Mr. Walter J. Lorino, Sr., and Mr. Vincent C. Rodriguez formed a corporation called Delta Marine Contractors, Inc. On April 21, 1966 Delta Marine Contractors, Inc. received the contract for construction of the 6 Jack houses from J. Ray McDermott. On May 3, 1966 Delta subcontracted the jack house job to Metal Cutting Specialty Company, Inc.
“Under these circumstances it is the position of plaintiff, Interior, that under the supplemental agreement of December 30, 1965, Cashen owes the $11,476.95 because all services and considerations required under the contract were performed.
“On the other hand it is the position of Cashen that the supplemental agreement between Cashen and Interior constituted Interior the agent of Cashen, to acquire for Cashen future contracts from Mc-Dermott. Cashen contends that the negotiating of the jack-house contract for Delta Marine, rather than Cashen, constituted a breach of the December 30 contract entitling Cashen to recover the amount previously paid Interior under the agreement, voiding the amount not paid under the agreement, entitling Cashen to the profit it would have made on the jack-house contract, and attorney fees for enforcing its rights. The Court cannot agree that the supplemental agreement should be interpreted as Cashen contends.
*713 “III. INTERPRETATION OF THE AGREEMENT
“It seems apparent to the Court that the main purpose of the supplemental agreement was to provide a new compensation for the November 8 contract, not because Interior was taking on a new obligation of negotiating future contracts, but rather because of a change in circumstances of the original agreement. The November 8 contract provided that Interior was to receive $69,992.00 from Cashen. This figure was supposed to represent 26.055% of the original contract price. However, it turned out that the cost estimates had been based on 70 tons of steel whereas the drawings called for 100 tons increasing the contract price. Even though the original contract was based on 26.055% of the contract price, this was stated in a figure of $69,992.00 rather than language which would have varied the amount to be received by Interior according to the final contract price. Thus, the supplemental agreement was necessary to change the rate of compensation of Interior to 26.055% of the contract price.
“The Court does not believe that there was any agreement between the parties that Interior was to become the exclusive agent of Cashen. On the contrary, it does appear that future brokering of Mc-Dermott contracts by Interior to Cashen was discussed, but that Mr. Cashen refused to agree to any further contracts whereby he would be bound to pay Interior 26.055% of the contract price. Thus, the language providing for this was eliminated by Mr. Cashen. Even the language struck by Mr. Cashen made specific reference to (22). additional fishing vessels. This is consistent with the testimony of Mr. Lorino that reference to future contracts was intended to refer to additional stern sections which it was rumored would be let by McDer-mott. However, since Mr. Cashen would not agree to the 26.055%, the contract did not even cover the additional stern jobs which apparently were never let anyway.
“The language in the supplemental agreement makes reference to future contracts. However, it further specifically •says that,
“ ‘ * * * the said “Cashen” does hereby agree, bind and obligate itself, its heirs/or assigns, to pay to the said “Interior Contractors” for the aforesaid valuable services rendered in securing the aforesaid contract for “CASHEN” from McDermott Shipyard for the constructing and loading out of stern sections for eight (8) fishing vessels the sum of 26.055% of the contract price * * * ’
(Emphasis by the trial Judge.)
“Thus, the final obligating clause contains no reference to future contracts. At the most there is ambiguity in the language of the contract and the Court finds from the facts that the intention of the parties did not extend to a future exclusive agency by Interior for Cashen.”
We concur in the Judge’s findings of fact and his interpretation of the agreements, and hereby adopt it as our own.
It can be readily seen from the agreements and facts that the appellant did not want to be bound for the payment of the consideration for future business set forth in the supplemental agreement of December 30, 1965, and insisted on it being stricken out, which was done at the request of Mr. Cashen. It is necessary in all agreements that there be some consideration, and the result of this would have been that for every subsequent contract the plaintiff secured for the defendant they would have had to negotiate and arrive at a consideration for obtaining said contract. We consider that this destroys that portion of the supplemental agreement which provides for future business and merely changes the consideration in the original contract from a specified sum of $69,992.00 to a percentage basis of 26.055% of the total contract *714 price. It was not an exclusive contract agency, as the trial Judge found.
It is conceded by both parties that if the reconventional demand should fall, the amount sought by' the appellee in its original petition is the correct amount due.
The supplemental reconventional demand filed by Cashen was never answered by the appellee. However, this is a moot question because of our finding that there was no agency or mandate and that the supplemental reconventional demand of plaintiff for additional damages has been rejected. The supplemental re-conventional demand merely increased the amount sought.
For these reasons the judgment of the lower Court is hereby affirmed, costs of this appeal to be borne by the appellant.
Affirmed.